The Court, refused to give the direction to the Jury prayed by the plaintiff’s counsel, because in the first part of the prayer they impliedly request the Court to restrict the Jury to the testimony offered by the plaintiff, only with respect to Charles Carroll’s dying seised of Cole’s Harbour; because the testimony produced by the plaintiff to prove the seisin aforesaid may be believed by the Jury, although they may not believe that fact to be supported by the testimony; and because the Court are of opinion, that the testimony produced by the defendant to controvert the fact of Charles Carroll dying seised of Cole’s *76 Harbour and not of Todd’s Range only, is proper for the consideration of the Jury; and that the Jury only can determine whether he died seised as aforesaid, which fact is material in making out the plaintiff’s title.
(Harrison, Ch. J. and Hanson, J.)(a)
*76 The Court Were also of opinion, that with what intention, by what right, a person entered into land and possessed it, and to what extent, were facts proper for the consideration and determination of the Jury, and, therefore, that the deed from James Todd and wife to Charles Carroll, was admissible in evidence, and such . from which, together with the whole evidence offered to the Jury in the cause, they might determine whether Charles Carroll entered into and possessed only the said tract of land called Todd’s Range. But that the said deed was not conclusive evidence of the fact, and that the plaintiff was at liberty to offer any evidence on his part to encounter or destroy any presumption that might arise from that deed, that he only entered under it; and might prove that he entered into and possessed the tract of land called Cole’s Harbour under the title of Thomas Cole the patentee thereof, or under the title of any other person.
And the plaintiff having stated in the opening of his case, that Charles Carroll, under whom he claimed, was in the seisin and possession of the tract of land called Cole’s Harbour, as heir at law to Thomas Cole the patentee thereof, by fiction and supposition of law, and also suggested in the second point made by him for the opinion of the Court, that he derived title under the said Thomas Cole the patentee. The Court were of opinion, that the law does not make a man in the seisin or possession of land, heir to another by fiction or supposition ; that conclusions of law are drawn from pre-established facts; and therefore, that when a man made title as heir to another, whether as a lineal or collateral heir, the law would not determine the fact, but he must prove *77 it; but that, if an entry into land could afford any' presumption of atid under what character or description the person entering was, yet it could only be a presumption of the nature of evidence, and liable to be encountered and destroyed by other evidence; that presumptions of the nature of evidence could only stand till the contrary appeared ; and that suppositions must yield to facts. And the Court accordingly gave their opinion to the Jury, that if, upon the whole evidence submitted to them, they should be of opinion, that the said Charles Carroll last named, died in the seisin of the tract of land called Cole’s Harbour, as the plaintiff has located the same on the plat, and that the said location is true, and that the devisees of the said Charles Carroll after his death, entered in virtue of his will, and were possessed of Cole’s Harbour as located by the plaintiff on the plat, and that the devisees being so possessed, the said Daniel Carroll died in such possession, and that Charles Carroll, who executed the deed to the lessor of the plaintiff, was heir at law to the other Charles Carroll herein named, and that at the time of executing the deed he was possessed in the like manner, the plaintiff hath made -a sufficient title to the part of Cole’s Harbour agreeably to his pretensions, and the Jury ought, accordingly, to find a verdict for the plaintiff. But if the Jury should be of opinion, that the said Charles Carroll died seised only of that part of Cole’s Harbour which lies within Todd’s Range, and that he entered into and was seised of the same as Todd’s Range only, as located by the defendant, or if the Jury should be of opinion, that the said Charles Carroll died seised of Cole’s Harbour, but that the true location thereof does not include any part of the pretensions for which the defendant has made defence, then the Jury ought to find a verdict for the defendant. >**■■
The plaintiff excepted to this opinion.
*78 Second exception. In addition to the grants of Cole’s Harbour and Todd’s Range, the plaintiff produced evidence to prove that the land so granted, had always since the grant of the tract of land called Todd’s Range, been held and possessed under the said James Todd’s title, from whence the plaintiff alleged that a title in fee-simple in the said land called Cole’s Harbour, upon a resurvey of which the said grant of Todd’s Range was made, would be presumed in the said James Toddt and the defendant, to encounter the presumption that the said James Todd was seised in fee as aforesaid, offered to prove by a witness, that it was the general reputation, that James Todd entered under authority of his mother under some contract, and not under any other title. To which the plaintiff objected.
Cooke, for defendant. The principle contended for here by the counsel for the plaintiff, shows the absurdity of their former prayer to the Court. In the preceding exception, they allege that it ought to be presumed that Charles Carroll held as heir of Cole, and yet they now give evidence to prove he held under Todd’s title.
Seisin Is, prima facie evidence of holding the fee ; but is presumption only, and may be encountered by other testimony. Buller, 101. 290. Raym. 311.
Jenings, for the defendant. The plaintiff produced evidence, that since Todd’s resurvey, the land was held under Todd’s title j therefore, it was to be presumed, that the plaintiff had a title in Cole’s Harbour, on which the resurvey was made.
The defendant offered to prove that Todd entered under his’ mother, under some contract, and not under any other title, to encounter the plaintiff’s presump-, tion.
The Court, so far from being wrong in permitting the defendant’s evidence, would act properly in rejecting *79 the plaintiff’s evidence. Todd's being seised of Cole's Harbour is nothing to the purpose; for he only conveyed Todd's Range. For what presumption is there, that Carroll had a title in Cole's Harbour ? There was an enrolment law in 167"4, so that if he had a conveyance, it would probably appear. Would he have purchased Todd's Range if Cole's Harbour lay in it, and he was entitled to Cole's Harbour P Todd's deed to Carroll, so far from inducing a presumption that Carroll had a title to Cole's Harbour, is the strongest presumption against it.
If the Court let the plaintiff’s evidence go to the jury, it is right that the defendant’s evidence go likewise. The plaintiff’s might be rejected as not pertinent to the matter; but if pertinent, any presumption offered by the plaintiff, is in its nature proper to be encountered by evidence on the part of the defendant. This is another attempt to hear evidence only on one side.
If Lord Manfield's case on presumption, King v. Alston, 5 Burr, is cited by the gentlemen, it may be answered by Almon's Parliamentary Debates, A. D. 1770, p. 19. &c. In this debate, Mr. Dunning exposes the injustice of not suffering presumptive evidence to be encountered by other presumptions.
The Court were of opinion, that the evidence offered by the defendant was admissible. The plaintiff excepted.
Third exception. The defendant, to prove the location of Cole's Harbour from the beginning at A., (admitted by the plaintiff and defendant,) from thence to B. and from thence to C., and then with the red lines, (see the plat annexed,) according to the defendant’s first location of the said land, offered in evidence the certificates of Lunn's Lot and Todd's Range, the runnings of *80 which are in the following words : “ Lunn’s Lot, lying in Baltimore county, on the north side of Patapsco River, and on a branch called the North-West Branch, beginning at a bounded Hickory standing on the west side of the falls of the North-West Branch, and in the line of the land of Thomas Pert and Robert Benjor, called Salisbury Plain, and running with the line of the said land N. W, and by N. 38 perches, to a bounded Hickory in the line of the said land; then S. W. 165 perches to( a bounded Red Oak, then S. 40 perches, then W. N. W. 45 perches to a bounded Hickory by the head of a branch, then S. 125 perches to a bounded Red Oak, then W. and by S. 20 perches, then S. and by E. 40 perches, then S. E. 80 perches to a bounded Spanish Oak, then S. 60 perches to a bounded White Oak, in the line of the land of John Hotvard, called Timber Neck, then by the said land E. S. E. 74 perches to a bounded White Oak of the said Howard’s land, then S. E. 120. perches to a bounded Red Oak, standing in a bite of the North-West Branch, thence bounding on the said branch, lying up N. 50 perches to a bounded Red Oak, then N. N. W. 38 perches, then W. N. W. 100 perches, then N. and by W. 50 perches to a Locust marked with four notches, then N. N. E. 45 perches to a bounded Red Oak, in the line of the land of Thomas Cole, then W. 75 perches to ,a bounded Oak of the said Cole’s land, then by the said land N. N. E. 275 perches to another bounded Oak, then E. 65 perches to the falls, then bounding on the said falls to the first bounded tree.”
“ Cole’s Harbour now called Todd’s Range, beginning at a bounded White Oak, standing in a line of a parcel of land formerly belonging to Alexander Mountney, and now in the possession of the said Todd, and running W. to a bounded Red Oak, standing by a small branch called the Spring Branch, then more west 75 perches to a double White Oak, in all containing 320 perches ; then *81 N. E. 273 perches to a bounded Red Oak standing on a hill, then E. 320 perches to a bounded Red Oak being a bounded tree of the aforesaid Mounteney’s land, bn the S. W. with the said Mounteney’s line to the first bounded tree.” And the said tract of land called Cole's Harbour is located on the plat(a) by the defendant, beginning at the letter A., thence to B., thence to C., thence with red lines to the beginning. Which certificates were offered in evidence, to prove that the trees marked at the said letters B. and C., were boundaries of the tract of land called Cole’s Harbour; also to prove that the said tract of land called Cole’s Harbour, run from the beginning to the letter B., thence to C., and no further west. To which evidence the plaintiff’s counsel objected; for that no evidence to prove a tree at the said place described on the plat at B., or to prove a tree at the place described on the plat at 6'., as trees of Cole’s Harbour•, (admitted tb be 279 perches only from the beginning at A.) for the purpose of shortening the distance of the first line of Cole’s Harbour from the letter A., which is expressed in the certificate to run. west 320 perches, and no tree being mentioned in the same. (See the expressions in the certificate of Cole’s Harbour in the next exception.) Therefore the evidence was inadmissible for the purpose of shortening the distance expressed in the first line of Cole’s Harbour, by the proof of trees, there being none called for in the certificate. Of which opinion was the Court,(b) and to which the defendant excepted, which exception was signed by Hanson, J. only.
*82 Fourth exception. The plaintiff, to maintain the issue on his part, read in evidence the grant and certificate of Cole's Harbour, which certificate certifies that there wai u laid out for Thomas Cole a parcel of land called Cole's Harbour, lying on the north side of Patapsco River, and on the north side of the North-West Branch, beginning at a bounded White Oak, being the westermost bounds of the land laid out for Alexander Mounteney, and running west to the mouth of a small gut, and over the said gut, and bounding on the said North-West Branch for the length of 32Q perches, then N. N¿ E. 275 perches, then E. 320 perches, bounded on the east by a line drawn S. S. W. to the first bounded tree, containing 550 acres of land, more or less.” The plaintiff als'o read in evidence an act of assembly, entitled “ an act ascertaining the bounds of land,” in the words following : (See this act in the appendix, ‘ No. 1.)
It was admitted by the plaintiff and defendant., that the said tract called Cole's Harbour, begins at the place described on the plat at the letter A.; and it was also admitted, that the north-west branch of Patapsco River is delineated on the plat.
The plaintiff, by his counsel, prayed the opinion of the Court, that the proper and legal construction and operation of the said certificate and grant of Cole's Harbour is, that from its beginning (agreed by the parties to be at the letter A.) it shall run west 320 perches* then E. N. E. 275 perches, then'E. 320 perches, and then S. S. W. to the beginning, and that all the land contained within the said courses and distances passed by the certificate and grant of Cole’s Harbour, to Thomas Cole the patentee thereof.
(See the arguments of counsel under the 9th exception, where the 4th, 8th, and 9th, are argued together.)
*83 Alexander Contee Hanson,
one of the Judges, delivered the following opinion.
The question before the Court arises upon the expressions in the certificate of Cole’s Harbour. As these cannot stand together, the opinion of the Court is prayed as to the true construction and operation of the grant. The question is not what estate passed by the grant; if that were the case, the Court might surely determine. Neither is the question what thing passes by the grant; if that were the case, it is equally clear that the Court might direct the Jury. As if the grant were of a tract of land, running certain courses and distances, containing 500 acres, and no more, and such courses and distances should be found to contain 1,000 acres. If the question, at this time of day, could arise upon the construction of such a grant, as to what passed thereby, the Court would be the proper jurisdiction to decide. But the present case appears to be a question merely on the intention of the parties. This intention, from the inconsistent expressions in the grant, is doubtful ; and to discover it, we must resort to such evidence as does not contradict the grant; and this evidence is proper only for the consideration of the Jury. One tiling is certain in the grant, that Cole’s Harbour must run 320 perches before the N. N. E. course of 275 perches can commence. This must be the case, or words in the grant, which admit of no doubt or diversity of opinion, must be rejected, and there could be no objection to directing the Jury as to this point. The inconsistent expressions are not doubtful, taken separately; but it seems all cannot be gratified. If one line runs west 320 perches, then the expression, bounding on the NorthWest Branch, is not complied with. On the other hand, if the 320 perches are expended on the North-West Branch, then the expression, running west, is of no significance. The question, then, is merely as to the *84 intent of the- parties respecting location; and that' question, the Jury only can, with propriety, determine, upon such evidence as does not contradict that part of the grant, which, in their opinion of the intention of the parties, must be allowed to stand. As to that part which is to be rejected, it must be then considered as" no part of the grant, and evidence may therefore be admitted to contradict it. But which part shall stand, and which shall fall, must be left to the Jury, who are to form their conclusions on evidence, to determine on which, is not within the province of the Court.
Robert Hanson. Harrison, Chief Judge,
delivered the. following opinion.
I have no objection to determining the quality or nature bf the estate that passed from the proprietor to Thomas Cole the patentee, or what land.; and if it were a fixed, rule and the established usage, in questions concerning location, that a patentee and those claiming under him, should only hold land according to. the location that arises from a construction made upon the patent itself, independent of, and in exclusion of, all other proof whatsoever, not appearing upon the face of the patent itself, I should have no objection to taking up the matter of location, and determining upon it. But as this is not the r.ule and established usage in questions upon location ; and inasmuch as the fact of location may be settled by other proofs, variant from that which would be setded from a mere construction, arising from a patent itself, independent of, and in exclusion of, all other proof, it is, my opinion, that the Court ought not to. direct the Jury in the case, so far as it concerns location, because their opinion, although founded on one piece of evidence only, might tend to impeach a location, where the location upon the whole proofs offered in a ease, might stand fair and good. I consider location *85 to be a fact, and that it may depend upon many ex post facto acts, such as the entry and possession, &c. of a patentee after the grant, and especially in cases where the expressions in a patent are doubtful, and where the words of a patent admit, in any degree, as in the present case, of what may be called a double location, or a location with two aspects. It is a fixed rule, that every grant and every deed shall be taken and construed most strongly against the grantor, and most beneficially for the grantee. If a grantor uses expressions in his grant which admit of a double location, or a location either in this or that way, it is in the power of the grantee to determine, he being the first agent after the patent granted, by an ex post facto act, his entry and possession, which of the two locations he will have. Hence it is evident, that the point of location may depend upon matter and proofs out of the patent itself. And yet, if the Court were to decide in a case upon the patent alone, they might determine against that location which the patentee had elected to have by his entry and possession, and which the words of a patent, conformably to the rule'of law laid down above, that grants are to be taken most favourably for the grantee, would authorize.
Upon the whole, the Court are of opinion, that they ought not to give the direction prayed by the plaintiff’s counsel, so far as it concerns the question of location.
To this opinion the plaintiff excepted.
Fifth exception. In addition to the evidence before offered, the plaintiff produced in evidence several deeds, of the years 1711, 1759 and 1761, from different persons, conveying parcels of the tract called Cole's Harbour, as “ part of a tract originally called Cole’s Har - bour, but afterwards resurveyed and called Todd's flange.”
*86 The plaintiff also produced evidence to prove that the whole of Cole’s Harbour and Todd’s Range, as located by the plaintiff, except so much as is included within the lines of Twin's Tot, as located by the defendant, has ever been held and possessed from the time of the grant of Todd’s Range by the said James Todd and those claiming under him. And the Court having directed the Jury, that if they found these facts to be true, that they might and ought to presume that the said James Todd was seised in fee-simple of the said tract of land called Cole’s Harbour, at the time of obtaining the grant of Todd’s Range; but that the presumption arising from the above facts might be encountered by other evidence on the part of the defendant; but that the evidence then submitted by the defendant not being sufficient to encounter that presumption, they might and ought to determine that the said James Todd was seised in fee-simple of the tract of land called Cole's Harbour. But the Court did not, in this opinion or direction, determine the extent of the said James Todd’s title, with respect to the location of the said tract of land, nor did the Court determine the effect of the defendant’s possession under the title of Turin’s Tot. And the counsel of the plaintiff having further offered evidence to the Jury, to prove that neither James Todd, nor any other person claiming under him, had ever held or possessed any part of the tract of land called Cole’s Harbour lying on the west side of Jones’s Falls, except the said Charles Carroll the father, and those claiming under him, since the time of the said deed from James Todd and wife to the said Carroll.
The plaintiff’s counsel prayed the direction of the Court to the Jury, that if they should be of opinion, that the tract of land called Cole’s Harbour, and the tract of land called Todd’s Range, were, at the time of the execution of the said deed from Todd and wife tQ, *87 Charles Carroll, reputed, and by the parties thereto taken and esteemed, to be the same, then the said deed was sufficient in law to pass to Carroll all the right and title which Todd had in the tract of land called Cole's Harbour, except so much thereof as is contained and described in the deed from Todd and wife to Hurst.
Cooke, for defendant. The prayer on the part of the plaintiff is, that if the Jury should think it was intended by the conveyance of Todd's Range to pass Cole's Harbour, that the Court should direct that it is sufficient for that purpose.
No evidence can be admitted to contradict a deed. 2 Bl. Rep. 1249. 1 Sir a. 646. 974. The deed is sufficiently plain and intelligible, therefore no doubts can arise as to the construction of it.
The verdict of the Jury will ascertain the location of Todd's Range, and if that and Cole's Harbour are the same, the latter cannot extend beyond it. The plaintiff can have no injury done him but by supposing Cole's Harbour to extend beyond it, and, therefore, on his own principles, it is not conveyed by the deed.
The Court were of opinion, and accordingly directed the Jury, that no part of the tract of land called Cole's Harbour, except that part which lies within the lines of the tract called Todd's Range, passed by the deed from Todd and wife to Charles Carroll, and that there being no doubt in the construction of the deed with respect to what land passed thereby, the Court were of opinion, and so directed the Jury, that no evidence out of the said deed was admissible, to prove that more or other land was intended to be conveyed than is contained within the lines of the tract called Todd's Range. To which opinion the plaintiff excepted.
(Harrison, Ch. J. and Hanson, J.)
*88 Sixth exception. The plaintiff, also, in addition, produced evidence to the Jury, to prove that the whole of Cole’s Harbour, as located by the plaintiff, except so much as is included within the lines of Lunn’s Lot, as located by the defendant, and claimed by her under the patent thereof, and such part thereof as is located upon the plat, as conveyed from jfames Todd to John Hurst, has been held and possessed from the year 1701, by Charles Carroll the father, and those claiming under him.
The plaintiff also produced evidence to the Jury, to prove that he entered in virtue of the deed to him from Carroll into the land in the said deed mentioned, and actually possessed a part thereof, and erected houses thereon, and remained so possessed.
Whereupon the plaintiff’s counsel prayed the direction of the Court to the Jury, that the evidence offered by the plaintiff, is a sufficient title in law for the plaintiff to maintain his ejectment.
Cooke, for defendant. The plaintiff shows the pos-' session of Carroll and those claiming under him, and prays a direction that the same is sufficient to maintain this action. There is no proof that Carroll had possession of Cole’s Harbour. The 5th exception shows that a part of it has been held by the proprietor of Lunn’s Lot. If title is to be made by possession, then it cannot extend further than the actual possession. Carroll was not heir to the patentee, and he had made no title to Cole’s Harbour by conveyance.
The Court refused to give the direction prayed for by the plaintiff’s counsel, because the facts by them stated to the Court, if they are believed by the Jury to be true-, do not prove that Charles Carroll was seised in fee of the whole of *89 Cole’s Harbour granted to Thomas Cole, but can only prove a right to. such parts thereof as are proved to have been possessed by the said Charles Carroll and those claiming under him, the said right, from the counsel’s state of facts, appearing to originate in the possession of Charles Carroll; because it is proper for the Jury only to determine how far the possession of Charles Carroll and those claiming under him extended; and because the plaintiff’s counsel impliedly pray the Court, to restrict the Jury to the evidence offered by him, in exclusion of the testimony offered by the defendant to counteract his title, which testimony, the Court are of opinion, is admissible for that purpose.
*88 (Harrison, Ch. J. and Hanson, J.)
*89 And the Court were of opinion, that to show a right in the plaintiff to recover in this ejectment upon a title of possession, it is necessary for him to prove that the possession of Charles Carroll, and those claiming under him, extended so far as to comprehend the defendant’s pretensions, or some part thereof.
The plaintiff excepted to this opinion.
Seventh point. The plaintiff’s counsel, to support this prayer to the Court, produced the grants of Cole’s Harbour and Hum’s Lot. (For the runnings, of which tracts, see the 3d and 4th exceptions.)
Then prayed the Court to declare to the Jury, that if they should be of opinion, that the plaintiff’s location of Cole’s Harbour, from A. to I., and thence N. N. E. 275 perches, E. 320 perches, and thence to A., (see the plat annexed,) is supported, that the defendant has no title to any land within and by virtue of the grant of Lunn’s Lot, that lies in Cole’s Harbour; and, therefore, that the 16th line of Lunn’s Lot, viz. N. N. E. 4 5 perches, to abounded Red Oak, in the line of the land of Thomas Cole, (see the lines designated on the plat,) as to any title conveyed by the grant of Lunn’s Lot, must stop at the west line of *90 Cole’s Harbour, and the next.course of Lunn’s Lot must run west to the end of the west line of Cole’s Harbour, and the next course by the said N. N. E. line of the said land of Thomas Cole, 275 perches.
. Cooke, for.the defendant. The prayer of the plaintiff’s counsel is, that the defendant can have no title to that part of Lunn’s Lot, lying within the west line of Cole’s Harbour. The plaintiff has no title to Cole's Harbour, and cannot take advantage of the defect of the defendant’s title. . This would bar the defendant of the act of limitation, if it was to be resorted to. And though the defendant had no title by virtue of his grant of Lunn’s Lot, to so much of it as extended within the lines of Cole’s Harbour, yet he has a right to defend himself under possession. If this opinion was given by the Court, it would preclude the defendant from contesting the location of Cole’s Harbour, which the plaintiff denies to run west.

The Court

were of opinion, and accordingly directed the Jury, that if they should be of opinion that the plaintiff’s location of Cole’s Harbour, from A. to I., and thence N. N. E. 275 perches, E. 320,perches, and thence to A* is supported, that the defendant has no title by virtue of the grant of Lunn’s Lot, against Thomas Cole and those showing a title under him, to any land that lies in the plaintiff’s location of Cole’s Harbour, and therefore the 16th course of Lunn’s Lot, viz. N. N. E. 45 perches, to a bounded Red Oak, in the line of the land ‘ of Thomas Cole, as to any title conveyed by the grant of Lunn’s Lot, against Thomas Cole, and those showing a title under him, must stop at the west line of Cole’s Harbour, and then the 17th course of Lunn’s Lot must run west to the end of the west line of Cole’s Harbour, as located by the plaintiff, and then, the 18th course of Lunn’s Lot must run by the N. N. E. line of the said land of Thomas *91 Cole, 275 perches, agreeably to the said location. But the Court declared that this opinion was not intended to prevent the defendant from producing evidence to prove that LunrCs Lot originally did run, or now runs, as located by her; and that she, and those under whom she claims, have possessed the same agreeably to her location, and that no person, except herself and those under whom she claims, have ever possessed the same, or any part thereof, claiming the same as part of Cole’s Harbour ; and the Court further declared, that this opinion did not at all respect the title of the plaintiff to Cole’s Harbour.
No exception appears to have been taken to this opinion.
Eighth and ninth exceptions. The plaintiff produced and read to the court, the act of assembly of 28th June, 1699, entitled “ an act ascertaining the bounds of land.” (See the 4<th exception.) Also the act of September, 1704, ch. 4. entitled “ an act repealing all former acts of assembly heretofore made, saving what are hereby excepted ;” which act has a clause “ saving always to all and every person and persons, whatsoever was his and their just rights and benefits, which he or they had by the former acts of assembly.”
The counsel for the defendant produced to the Court the following acts of assembly, viz. “ An act declaring an act entitled an act, ascertaining the bounds of land to be in force,” passed at a session of assembly held in April, 1706. An act entitled “ an act for ascertaining the bounds of land within this province,” passed at June session, 1715. And an act entitled “ an act for ascertaining the bounds of land within this province,” passed at April session, 1717. (For the several acts here offered in evidence, see the Appendix.)
*92 The counsel for the plaintiff prayed the opinion and direction of the Court, to the Jury, that the rights and benefits of James Todd, the patentee, and Charles Carroll, who purchased from him, derived under and by the act of 1699, were saved and reserved by the act of 1704, .and that the deed aforesaid, from Todd and wife, to Charles Carroll, conveyed all the right and title which the said James Todd had in Todd's Range, except such part as was sold to Hurst, and that Charles Carroll, notwithstanding the act of 1704, and the acts produced by the defendant, was entitled to the rights and benefits under the act of 1699, as to the extent and quantity of the said land mentioned to be sold to him by the said deed, in the same manner as if the said act of 17.04 had not passed. The plaintiff also produced the said act of 1699, to prove, that by the said law the lines and extent pf the tract called Todd's Range, did include the whole of the tract called Cole's Harbour, at the time of the executing of the deed,
Cooke, for defendant. The plaintiff contends, that the rights acquired under the act of 1699, were saved by the act of 1704, and that the deed from Todd and wife to Carroll, conveyed all the right in Todd's Range to. Carroll, as to extent and quantity, as if the act of 1704 had not passed.
The act of 1699 says, “ If a certain number of perches be prescribed to run by a creek, river or branch side, and no marked tree, nor certain course expressed, the number of perches shall not be spent away by the several windings of the river, creek or cove, but brought to a straight line of that length.” But Todd's Range calls for a tree, and has a certain course, therefore it is not within the act, and could have no right saved by the act of 1704.'
*93 As Toad’s Range is younger than Lunds Lot, there epuld be no right under Todd’s Range, that could affect the proprietor of Lunds Lot. The saving clause, if it js to have any effect, can only operate to confirm those rights which had been ascertained and acknowledged under any of the repealed laws, by some act done. The words are in the preterperfect tense.
The plaintiff cannot be injured for two reasons. First, the act does not apply where bounds are called for; and, secondly, Lunds Lot is eider than Todd’s Range.
Matter in law is not to be given in evidence, for the Jury are to try only matter of fact. Duncomb, 317. Vaugh. 143. A saving in a statute which is repugnant to the purview, is void. 1 Co. 47. Plow. 564. 1 To. 339. 10 Mod. 115. There can be no proceedings under a repealed law. 1 Bl. Rep. 451. A subsequent law enforcing the provisions of one expired, is void. Burn’s Fust. 281. A cancelled deed is void, and cannot be given in evidence. Het. 138. Vin. Evid. 106.
The plaintiff contends, that the act of 1699 is evidence to prove the lines of Todd’s Range did include the whole of Cole’s Harbour. But there was no title proved by the plaintiff to Cole’s Harbour, either by descent or purchase. And the act was repealed by the act of 1704.
Jenings, for the defendant. Concerning the act of 1699, commonly called the land law, how far it ought to be given in evidence in this cause. This act expired the 15th Aprils 1707. Cole’s Harbour was taken up before the and law passed, and Todd’s Range during its continuance.
In the general repealing law of 1704, ch. 77. there is the following clause : “ Saving to all and every person or persons, whatsoever was, and is, their rights and benefits, which he or they had by the former acts of assembly, any thing in this present act contained to the contrary notwithstanding.” By ch. 79. of the same session, *94 the act concerning the bounds of land is declared to be in force. It was revived by the net of 1705, ch. 10. and ,iyo6, eh. 11;
# General rules of construction applicable to this case.
Statutes on the same subject are to be construed together. Plow. 206. 1 Burr. 447. 4 Bac. 646.
By reviving an act which had been repealed, the repealing act is made of no force. 2 Inst. 686. Plow. 203, 204.
By the statute of 7 Edw. VI. if any treasurer, receiver or minister-accountant, or their deputies, take or receive more than legal fees, he is to be fined. It was held, that though this statute was general in the words, it extended only to the king’s receivers, &c. and a clause in a former statute, 32 Hen. VIII., was resorted to, to.construe the other. ■
It was held that general words should be construed as particular words, where the intent was particular. Plow. 204, 205. 464. , .
Suppose the legislature had said in the continuing acts that they did not mean to include the act of 1699 in the repealing law, therefore they continued it,- would not this satisfy any one ? And yet their meaning, from a construction of the continuing laws, is equally plain.
The intent of the legislature is to be collected from all parts of the act. 3 Co. 59. b. 4 Bac. 648. It is objected, that in cases where two statutes cross one another, yet both shall stand. It may be answered, that this must apply to cases where it is possible. Where two statutes are made together, and one contrary to the other, reasonable construction shall be made. And where the penning of a statute is dubious, usage is a just medium to expound it by, for .jus et norma locjuendi is governed by usage. Usage is the hest interpreter. 2 Rep. 81.
What effect has the repealing law, according to the construction given to it bj’ the plaintiff’s counsel? By *95 the continuing law, the act of 1699 exists. Does the repealing law give it any other effect ?
By their construction, the act of 1699 is repealed, and yet the rules in it are to continue. The continuing laws say the rules in it shall continue. If the repealing law extends to this case, what does it do more than the continuing law ? for this preserves in full force the act of 1699. Therefore it supposes the assembly meant to keep that act in force by the repealing law, and yet immediately after did not know their meaning on the effect of it, and therefore passed another law to the same purpose.
What was saved in the repealing law ? (if it applies to the act of 1699.) Certainly nothing but what was in it. But every thing in it is continued in force- by the continuing laws. Then what effect has the repealing law ?
Adjoining lands have been taken up without paying any respect to this law, on the general rule, that a party is to go to his boundary, if proved ; if not, to be limited by his course and distance. This law would unsettle every thing.
Carroll bought under boundaries, and he has more land than is contained within Todd's Range.
Suppose a power had been given to the Judges, to decide according to the provisions of the act of 1699, and it was afterwards repealed; would the jury, in such case, be excluded from determining the location ? Suppose there had been no conveyance ; would not the expiration of the law leave every one as they were before it had passed ? Then can the conveyance give a more extensive right than the party himself would have had, if he had not conveyed ? How could he transfer sucha supposed right ? Such right must also have descended, if it could be conveyed.
What necessity was there for Todd to have a resurvey, if the law gave him more land without it ? Certainly the only kind of right given by the act, was to have the rule it established applied so long as it lasted. By their *96 argument, a man exempts himself from legislation ; for if he purchases during the existence of a particular law, it can never be altered afterwards. Apply this to Lunn, who took up this land before the law. What right had the legislature to make ex post facto rules to take his land from him ? How could the legislature pass an act for perpetuating bounds, if they had any idea the act of 1699 was in force ? In that act there is a mode pointed out.
This is an attempt to establish a rule, that in all cases antecedent to the expiration of the land law in 1706, the boundaries are to be disregarded, and the course and distance to govern the running. The act of 1723, ch. 8. speaks of lands depending on bounds ; but it seems they must depend on the land law ; and if the case does not come within the provisions of that law, then the bounds are to be disregarded.
An affirmative act is a repeal of a former affirmative-act, if contrary thereto, although there are no negative words in it. 1 Ray. 159, 160. Now, if the repealing Ltw gives greater affirmative rights than the subsequent continuing acts, then it is a repeal of such further rights. There are two continuing acts after the session of 1699.
If it is objected, that we say the law of 1699 was not repealed by the act of 1704, then the continuing laws are of no effect; for that act being perpetual, and the continuing laws for a particular time, it does not repeal them. T. Raym. 397. It may be answered, that this does not ans wer the objection, that a law repealed being revived, that the repealing iaw is destroyed.
The continuing law being for a time, if it does not repeal a perpetual law, yet it shows they did not intend the repealing law should take effect in that case, and to explain their intention, they passed the continuing law, and intended it to operate as a repeal of any construction. *97 which might arise from the general words of the repealing law, that the act of 1699 was repealed by it.
Suppose the law makers present, and they were questioned as to their intention. 4 Bac. Abr. 649. Statutes creating a new jurisdiction must be construed strictly. 4 Bac. Abr. 653. 1 Stra. 258. 260.
All the most valuable lands in the country, especially In the lower counties, and the eastern shore, were taken up before the year 1707»
If the construction of the law given by the plaintiff’s counsel were right, would we be permitted to prove any boundaries of Todd’s Range ?
See the act of 1718, ch. 18. and the former laws for pointing out a different mode for settling boundaries. The law of 1718 is a general law, and relates to|all former surveys.
It is said to be a hard case, that a person buying under the act of 1699, should not be benefited by it. Is it not equally hard, that people who took up land before the law, (as was the case with Lunn’s Lot,) should be stripped of the property they had before purchased ? By the act of 1723, ch. 28. the boundaries of creeks, &c. are not to be concluded by any former laws. If land, being a junior survey, had been laid out from a boundary of Todd’s Range, would it be permitted, by running Todd’s Range’ without regard to boundaries, so as to take it away under the law of 1699 ? Might it not with equal propriety be contended, that a person who took up land during the existence of the law of 1718, or the other precedent similar laws, should have a right to establish his boundaries by commissioners, as provided for in those laws ?
The plaintiff’s counsel cited the case of Crow’s Lessee v. Scott, of April term, 1751, determined in the Court of Appeals,(a) wherein it was decided, that the proceedings of the commissioners were conclusive evidence. Th-v *98 law was dissented to in 1721. But if the law of 1600 was a constant rule of property, why was the dispute taken up under the commissioners’law of 1718 ? 1
The Court were of opinion, that if James Todd, the patentee, and Charles Carroll, who purchased from him, had any rights and benefits under the act of 1G99, that the same were saved and reserved by the said act of 1704. But they were of opinion, upon consideration of the repealing act in 1704, ch. 77. and the subsequent act of the same session, ch. 79. also another act in 1706, respecting the said act of 1699, that the words in the latter part of the said act of 1704, “ saving always to all and every person and persons, whatsoever was his and their just rights and benefits, which he or they had by the former acts of assembly,” repealed by the said act of 1704, can only mean, in the true construction of that law, and-from a construction drawn from analogy in like cases, that interests or estates, acquired under the faith or sanction of preceding laws, and existing at the time of making the said repealing law in 1704, and ascertained by some act done, under the permission or authority of the preceding laws, should be preserved; and that the said words, in the said repealing clause in the act of 1704, do not mean upon any principle of sound construction, that the rules prescribed in the body of the said act of 1699, should be set up as rules of decision, because such á construction of the saving clause in the said act, would be in direct opposition to the plain and obvious intent and meaning of the legislature, expressed in the purview and body of the said act, “ That all acts of assembly made before (except two particularly therein excepted) should be null and void-” And because the said act of 1699 is repealed,(a) and, *99 ■therefore, that no rules prescribed thereby are of efficacy, further than as they may have been adopted. Upon this point they were of opinion, that the point of location between the parties must be determined upon the whole of the evidence adduced by the parties, and that the act of 1009 shall not be read to the Jury. They were also of opinion, that the deed from James Todd and wife conveyed all the right and title which the said Todd had, and could legally and rightfully convey, in the tract of land called Todd’s Range, to Charles Carroll.(b)
*98 (Harrison, Ch. J. and Hanson, J.)

*99
The Court

were (9th exception) further of opinion, that the act of 1699 should not be read to the Jury ; because no evidence had been produced to prove that Janes Todd derived his title to the tract of land called Cole’s Hai hour, either by descent or purchase, from the said Thomas Cole, himself, or any deriving a tide from him ; and because the said act of 16S9 was repealed, amongst other acts, by a general repealing act of 1704. And the Court were of opinion, that the said repealing act of 1704, “ saving to all and every person and persons, whatsoever was his and their just rights and benefits, which he or they had by the said acts,” repealed thereby, can only mean, in the true construction of law, that interests or estates acquired under those acts, and existing at the time of passing the said repealing act, should he preserved; but the saving does not mean, that the rules of construction prescribed by the act of 1699, for *100 ascertaining the bounds of land, should be preserved under the idea of the said rules being rights and benefits, which any persons had at the time of passing the said repealing act. The said' rules never did confer those interests and estates ; and, therefore, the said rules were not preserved by the saving clause in the repealing act. They were only meant to govern the decision of Juries, with respect to the extent of land contained in certificates and grants, when controversies thereupon should arise-during the existence of the act of 1699. But they never can be considered as rights and benefits, vested in individuals, and comprehended and saved by the saving clause of the repealing act. To give them such a construction as is insisted on by the plaintiff’s counsel, would render the repealing clause of no effect, and such a construction cannot prevail without contradicting the established rules for the construction of statutes.
The plaintiff’s counsel excepted to the opinions of the Court, on both the bills of exception.
The plaintiff appealed to the Court of Appeals, where the judgment was affirmed, at October term, IT'S/.

 Judge Goldsborough having, previous to his appointment as Judge, been counsel for one of the parties, did not sit at the trial of this cause.

а) See an abstract annexed oF the plat filed in this cause.

 Jenings's notes on this exception states, that Harrison, Ch. J. retracted this opinion the next morning. This may he the reason why his name is not signed to the bill of exceptions.

 See vol. 1. p. 182.

 It appears that the repealing act of 1704, ch. 77. also excepted such acts, “ which are not revived, saved and enacted this present session oí assembly.” Chapter 79. of the same act, passed at the same session, declares the act of 1099, “ ascertaining- the bounds of land,” to bo in force *99 until the end of next session. The act of 1699 was a permanent law previous to the act of 1704, eh. 79. liy the act of December session, 1704, eh. 98.il was also declared to be in force until the end of the next session. It was in like manner by the act of 1705, eh. 10. declared to bo in force until the end of the next session. And also, by the act of 1706, ch. 1. was declared to be in force till the end of the next session, when it expired. Sec the Appendix, where the above-mentioned acts are at length.

 In the case of Griffith's Lessee v. Howard, in the General Court* at October term, Í6&7, the same opinion, verbatim, was given by the . Court, as is here reported in the fifth and eighth exceptions, u;d en appeal t,o the Court of Appeals, the judgment was affirmed.